May it please the Court, Carrie Bader again for Juan Reyes-Aguilar. You're back here. I'll do my best. I'm sorry. I'm going to start with the concept that a deportation proceeding, if it is so procedurally flawed, can effectively eliminate the right for the alien to obtain judicial review. I will also cite Copeland from the Second Circuit that says, the denial of an established fundamental right to be informed of the possibility of relief can, if prejudicial, be a fundamental flaw in the immigration proceedings. And I can focus on the flaws in the immigration proceedings in this case, or I can focus on the flaws in the proceedings in the Eastern District of California where the conviction lies. And I know those are kind of two big topics, and I don't have much time. I'd like to reserve two minutes for rebuttal. But if the Court could let me know if you have concerns about either proceeding more than the other or certain questions, that would be helpful. In a way, I've got the same problem I had with the last one, and that's the prejudice question. I mean, he's been deported based upon the marijuana conviction. Here, it's a Federal conviction instead of a State conviction. Hard to tell always as to the likelihood of success on either a quorum nobis or a 2255. Are you representing him in the State court in the 2255 or quorum nobis in front of Judge Ishii? It's a quorum nobis. Judge Ishii has also categorized it as a habeas corpus, and he recently, this past month, assigned me to that case. Yeah, so you are representing him. It's the same thing, you'll recall it somehow. I think what the government is trying to do here is make the plausibility standard go away. It's only a plausibility standard. Is it plausible that he could have vacated his conviction, or is it plausible that he could have gotten asylum if he'd been told he had the right? Is it plausible he could have gotten voluntary departure if he'd been told what his hearing rights were or that it was available? It's just plausible. That's possible. It's not some huge hurdle. Oh, I've got to prove for you that that conviction will be vacated. I don't have to do that. Well, I think plausible is beyond impossible. You've got impossible, and maybe you've got plausible. But you've got to show, to my mind, you've got to show not only that it's plausible, but you can get the underlying conviction. Here's Federal Court conviction vacated. And I think maybe it's plausible. As I look at what we've got here, his co-defendant very clearly has all the immigration things and so on. And as I look at Quan, I think that rule is established before we get Padilla. So I don't think you even need to find retroactivity out of Padilla. I think Quan was already the case law of the circuit, and he was misadvised, it appears. I mean, the whole point was to have this procedure disposed of in such a way that he's not going to get deported. My question is not really as to plausibility of getting some sort of quorum nobis or habeas relief out of Judge Ishii, because I think that is plausible. Maybe not a guarantee, but plausible. But I also think you need to show that it was plausible that had the district judge – excuse me, had the IJ behaved properly or behaved predictably, that it was plausible the IJ would have granted a continuance in order to seek the quorum nobis or 2255 in front of Judge Ishii. Okay. Let's talk about then the immigration hearing. Because the immigration judge in that case violated several due process concerns. The first was notice. The notice to appear in that case was all in English. Mr. Reyes is a Spanish speaker and reader. He's had an eighth-grade education. The notice in that case, the notice to appear was all in English, and the judge literally said, now, it's not important whether you have that document now. It's not important what you did with the NTA. All that is important is that you received a copy of it sometime in the past. So he doesn't care if they received notice of what they were charged with or what their potential defenses were. Then he goes on to say there are some types of relief from deportation that you might qualify for. Each type has specific requirements. In order to be granted relief, you must request the relief, and you must prove you qualify for it. So he's telling the people who don't speak English, they have to find out what their charges are by themselves. It doesn't matter if they received the NTA or not, the notice to appear. And he says they have to conjure up whatever defenses they might have and prove it. They have not even been told what their potential defenses are. The notice to appear is all in English, and it doesn't say anything about the most common form of relief for aggravated felons, which is post-conviction relief. It says nothing. There's no notice here. And he's not even told that you've suffered an aggravated felony. He's not told of the consequences of that, that makes you permanently exiled unless you manage somehow to conjure up a defense for that. There's no notice here whatsoever, plus the immigration judge is putting the burden on the alien to find out what his own relief is. And we've told, as we heard in the last case with the Murrow-Inclon and the Arce-Hernanda and the 8 CFR 217, that requires the judge to do this. They're supposed to wait. When somebody, there's a gleaning that they have some eligibility for relief, they have to advise them. The IJ has to do that. And those cases say, even if the judge just finds out he's a permanent resident, that is enough for the IJ to have to make further inquiries with the respondent, the alien, to see if there is any form of relief. And this did not happen here at all. When Mr. Reyes finally did get an attorney, his attorney failed him too. His attorney appeared telephonically. And then the immigration judge said, all right, I'm going to read the charges to you, to the attorney on the phone and to his client who's there in the court in Arizona. And he starts to read the charges. And then the IJ interrupts himself and he says, no, never mind. Counsel, are you prepared to enter a plea today? So Mr. Reyes didn't hear his charges. And his attorney appeared telephonically, so he doesn't know his charges. And then they go right into a plea. That's not due process. That's like taking somebody into criminal court, he gets arraigned on a complaint or an indictment, and midway through the indictment, the judge looks up and says, counsel, are you ready to plead your client right now? It's not notice. How are we supposed to make a judgment as to whether it was plausible that the IJ, if asked by competent counsel, or a competent IJ, a generic IJ, not necessarily an idiosyncratic or bad IJ, would have granted a continuance in order to allow Mr. Reyes to seek a 2255 of his Federal marijuana conviction? I think he would have. Is that what you're questioning? I know you say you think he would have. How am I supposed to make a judgment as to whether that's plausible? Because this immigration judge asked the attorney two times, are you sure you're not going to file anything on behalf of your client? He said that twice. And even after he'd ordered Mr. Reyes deported and Mr. Reyes said, I want to appeal, the IJ said to the attorney, are you sure you're not going to file anything on his behalf? He would have granted it, no problem. He'd already Mr. Reyes had been sitting in custody in Arizona near the border for four months looking for an attorney. He'd already granted him continuances. There's proof in the record of all that. So you can, if you're worried about whether he could have or would have granted a continuance, I think the answer to both questions are yes, absolutely.  So this question is, how plausible is it that he would have granted a continuance in order to allow Mr. Reyes, whether through this attorney or through another attorney, to seek to vacate the Federal conviction? It was highly plausible because it's up to the alien to decide. If the alien is languishing in custody while it takes a year or two to try to or three to overturn his conviction, that's his decision. And if the judge sees that the client is fine, okay, I'd rather sit in custody than be sent back to my country where I have nobody there, then they'll grant it most likely. If they don't grant it because they're pressured by the fact they need to get people out of detention because there's not enough room for beds, that's not a proper reason for denying a continuance. I think he would have granted it for sure in this case. And I think in this case, and with Mr. ---- I won't argue the last case. But I think people will wait to ---- they'd much rather. It's like the Padilla case. They'd much rather sit in custody here in the United States than take a plea that's going to permanently exile them to some place they don't have any ties to or never want to be again. So there was that problem. There's also the problem that ---- I'm going to, for a moment, counsel, explore your argument regarding IAC with regard to the immigration attorney that was hired to appear telephonically at the hearing. What facts were known to that attorney that would have alerted him to a possible problem in the aggravated felony conviction before Judge Ishii? As I understand it, the family understandably were rushing around trying to obtain immigration counsel to assist him, but the attorneys wanted too much money. So this particular attorney who ended up representing Mr. Reyes at the immigration proceeding was hired just a few days before the hearing. And it's very unclear, and if it's clear, perhaps you can assist me by pointing me to portions of the record, but it's very unclear as to what the family told him, if anything, that would have alerted him to the fact that there's a ---- there's a problem, it's problematic. There's a whole history that you laid out as to the various ways in which his counsel in the case before Judge Ishii failed him. But the immigration lawyer had no way of knowing that, or at least I can't tell whether or not he was ever told that. I think you're right. The record is unclear if he knew it or not, but I don't think the onus was on the family because the family has no idea. Well, sure. But if he didn't know, you're talking about the fact that he was ineffective, right? Part of your claim is that this immigration attorney came in and he was ineffective because he failed to request the IJ, a continuance from the IJ, in order to explore post-conviction relief. So then my question is, well, how was he ineffective? What was known to him such that the failure to ask for a continuance or to do any investigation constitutes ineffective assistance? And what in the record really reflects what was ---- what he was told or what he knew at the time that he came in to represent Mr. Reyes just mere days before the hearing proceeded? Okay. Strickland applies to immigration attorneys as well. And Strickland notes the duty of loyalty to a client, which is probably the biggest, a duty to avoid conflicts of interest, to advocate the defendant's cause, and he has more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the case and to bring your knowledge and skill. When you are representing somebody in immigration proceedings, I think it is your duty as the attorney to find out why that person is in immigration proceedings. If they have an aggravated felony on their record, you are obligated to tell them, it's hard to get rid of these things, it's hard to get any relief from deportation, but these are your options, withholding of deportation, CAT, or post-conviction relief. Those are very simple duties. And this attorney was obligated to know why his client was in immigration. So it doesn't really matter whether he knew or not. It's very troubling if he knew. It's very troubling if he didn't know until the middle of the hearing when he heard the charges against his client and all of a sudden he denied them, which kind of makes me think he did know. So just if I want to make sure I understand your argument here. So the attorney gets a phone call from the family a few days before the hearing and agrees to take the case. Your argument is that the attorney then has the obligation to, when faced with an aggravated felony, inquire, investigate, ask for continuance if necessary, basically exhaust whatever available potential relief the person may have. Otherwise, it's ineffective for purposes of immigration proceedings? Well, I think we don't know from the record, but what I think he had a duty to was to get his post-conviction relief. If you want me to try it, I'll try it. And his other obligation, and this Court has made clear, is he has to make a record for a review for his client. If there's no record to review, he loses, Mr. Reyes loses his right to obtain judicial review if his attorney didn't even bother to make a record for a review. And the client very specifically says in the immigration hearing, I want to appeal. And his attorney failed him. He didn't make any record for review. And then the attorney violated his duty under the Deeringer case, which is a Supreme Court case, to make sure. I want to quote it because I think it's extremely important. On page 16 of my reply brief, applying to Flores or taking a test to this case, we note that their friends have shown that Volcago would have timely appealed but for her counsel's error. They showed that the appeal was actually filed and that due to counsel's error, it was filed one day late. We conclude that prejudice should be presumed. This attorney told the judge in his request for a telephonic hearing that I represent Mr. Reyes in all immigration matters. That would include an appeal. That would include at least advising him about an appeal or taking care that his Before you sit down, just review for us precisely the timing. When was the immigration attorney hired? And how many days after he was hired did we have the hearing in front of the IJ? He had the hearing on October 15th was the hearing. He was hired, I think it was September 24th. So it was impossible for him to get post-conviction relief in that time period. So we're talking three weeks. He'd been the attorney for three weeks. Okay. And he didn't ask for a continuance saying to the IJ, Your Honor, I just need more time to look into this case because there's a lot of stuff that I don't know yet. He didn't say a word about that. He just fell right into the plea. Good morning, Your Honors. May it please the Court. Jerry Benke for the United States. First and foremost, the government believes that it's not even necessary to get to the issue of prejudice because there was no due process violation in this case. This Court recently held in Plains v. Holder that it is clear that since 1996, a conviction is final for immigration purposes once the judgment is entered. And in Plains v. Holder, this Court was reviewing that issue in the context of a situation where the alien had a pending sentencing appeal related to his underlying conviction. So in Plains v. Holder, the time for filing a 2255 had yet to run. A sentencing appeal was still pending. And under those circumstances, this Court held that for immigration purposes, the underlying conviction was final. That being the case, that being the state of the law, the immigration judge in our case certainly didn't commit any due process violation by failing to explore with the defendant the possibility of collaterally attacking his underlying aggravated felony. What about IAC by the Immigration Council? Same thing, Your Honor. For purposes of immigration, the underlying conviction was final. The only potential argument for IAC that I've seen in this is the argument that perhaps the attorney should have at least tried to get the immigration judge to continue the proceedings and then maybe during that interim continuance, he would have been able to get his underlying conviction overturned. And first and foremost, I don't believe there's any authority that says that an immigration attorney has such a duty to continue proceedings for the purpose of pursuing a collateral attack. And second, you know, why should that not be? I mean, if you – first off, any attorney has a duty to make inquiry and figure out what the plausible grounds for relief are. And why, having done the inquiry, if it turns out that there are plausible grounds for relief, is it not IAC not to ask for those plausible grounds for relief? Well, a couple of points in response to that. First, if that were indeed the standard, what we would essentially be saying is that there is a duty for immigration attorneys to have some expertise regarding the criminal laws and post-conviction procedures in all 50 States. Well, I don't think an immigration attorney practices in all 50 States. No, Your Honor. But an immigration attorney here in California, for instance, may have a client who suffered an aggravated prior conviction in, say, New York. And that's certainly not the case here. No, Your Honor. That's not the case here. So let's look at this attorney. This attorney has a client who has a California conviction. And if he had inquired, he would have discovered, in fact, that there's probably a genuine problem, not even under Padilla, even assuming Padilla is retroactive, but under Quan, which was already the law of the circuit. That is to say, it's very probable that we have affirmative misrepresentation. We do we know that the family raised money. You know, one of these typical stories. The family doesn't have much money, but it raises money to hire a lawyer because they're very worried about immigration consequences of the conviction. The lawyer assures them that there are no adverse consequences coming out of this. And it turns out there are. So, I mean, they just get not just a failure to advise. That's Padilla. They get affirmatively incorrect advice. That's Quan. So you don't have to look very hard to see that you've got a real problem with that conviction. And who knows? I'm not going to prejudge what Judge E.C. is going to do with this one, but I think it's at least plausible that Judge E.C. is going to overturn that, set aside that conviction. So a competent lawyer making inquiry would have discovered this. Now, what am I supposed to do with the fact that I understand the lawyer's been hired and he's got a hearing in front of him in about three weeks. I think it's absolutely unrealistic to expect a competent attorney operating on a limited budget to have discovered this in the space of three weeks. Maybe it's unrealistic to expect that a competent attorney operating on a limited budget ever would have discovered this. But there's something that strikes me as wrong about this case when we've got a conviction in federal court that so clearly violates, to my mind, so clearly violates Quan, and that's being used as a basis for a deportation order. And if the conviction is wrongfully entered, the deportation order is invalid. I mean, this case just doesn't feel right to me. The last case, I have real trouble with the notion that it was realistic to expect that there was going to be a vacation of that State court proceeding anytime soon and so on. But this one feels a little different to me. How do you respond? I agree with the Court's concerns when you look at the factual record related to what happened in the Eastern District of California. The issue, though, is how is that to be addressed? And getting back to the original question of whether it was IAC by the immigration attorney in this particular case, again, it was not. Even if a competent attorney would have looked into it, had he looked into it and made a request, in all likelihood the request for continuance would have been denied. The Board of Immigration Appeals has ruled numerous times, and cases cited in the government's that continuance for the purpose of collaterally attacking an underlying aggravated felony conviction is not good cause to delay an immigration proceeding. So if the attorney had taken the steps that you suggested, I think that in all likelihood the immigration judge would not have continued the immigration proceedings for that purpose. That may be right. And so you said now the real issue is what are we going to do about it. So what are we going to do about it? Anything? I mean, is this guy just plain out of luck, even though it may turn out that he has an invalid conviction upon which the deportation order was premised? Well, the Eastern District of California proceedings have not run their course yet. I know. We have a portion of a record here. Yeah. Let's assume, and I'm assuming and I'm getting ahead of what the actual events in the real world are. Let's assume that Judge Easey sets aside the conviction because of a Quan violation. Then what happens? Well, the first question is if Judge Easey sets aside the conviction because the defendant was not properly advised, therefore his plea was not knowing and voluntary, the first question is, is the U.S. Attorney's Office in the Eastern District of California going to walk away from that case, or will they continue to pursue the prosecution and potentially the defendant may still end up with an aggravated felony conviction? Yeah. But if that happens, then you're going to need a new deportation proceeding assuming he's moved to reopen this one, right? Yes, Your Honor. That would be the next step. Okay. So let's assume that he gets this federal conviction set aside and the U.S. Attorney may or may not go forward with another prosecution. I don't know the answer. Sitting here, you don't either. It's a possibility. Is the next step then for his lawyer to try and set aside the deportation? Absolutely, Your Honor. Okay. Assume that that's he gets a motion to reopen granted and assume he gets that set aside. Then what happens? Well, before answering that, I want to point out that even if he gets his underlying conviction set aside, it's still speculative that he would obtain immigration relief. I know. But now I'm assuming that he gets immigration relief. Then what happens? Does it say that the deportation or removal order is set aside? If the deportation or removal order is set aside, then I think what happens after that and I think what Your Honor is getting at is what happens with this 1326. That's exactly what I'm after. And I think that depends on how the immigration proceedings play out. The defendant in this case was convicted of coming back into the country while under a deportation order. That was the crime. Right. If he's able to reopen his immigration proceedings and perhaps get some sort of pro-tunk reinstatement of his lawful permanent residence status, then potentially he may have an argument for relief from the 1326 case. If he simply reopens his immigration proceedings and at that moment gets his resident status reinstated, then he may not have a grounds for relief from his 1326 case because at the time he reentered the United States, he was still doing so unlawfully and he was still under at that point a deportation order. I mean, that is my question. Do we have any cases out there that tell us what happens if someone reenters with what is at the time an apparently valid removal order, is prosecuted under 1326 for reentry after having been lawfully removed, then it turns out that the removal order is later vacated. Do we have any cases that tell us what might happen to a 1326 conviction in that circumstance? I'm not aware of any, Your Honor. Nor am I. I'm not aware of any cases where there have been some sort of post-conviction relief on a 1326 brought on those grounds. Nor am I. I don't know. I'm theorizing what some of the possibilities might be. I think it's improbable, but I don't know the answer. But in any event, the central issue here is when you look back at what the immigration judge did in the immigration proceedings in this case, there was no error. And even if there was some due process violation, as has been alleged, the defendant can't make prejudice in this particular case. As we just went through with the last question and answer, in order to establish plausibility of relief, you have to pile speculation upon speculation. You know, the first speculative question is, would the continuance be granted? The second question would be, would he get his conviction vacated? And then after he got his conviction vacated, would he be able to get some relief from deportation at that point? And that's not the type of speculation that we're supposed to engage in on a 1326D collateral attack. Well, if he got the conviction set aside, what would the problem be in having him obtain some relief to the speculation? I mean, if it's set aside. If the conviction is set aside. Then it would be as if he had never crossed illegally. What's the problem? I don't know that there would be a problem, Your Honor. I was. Well, why is it speculation? I'm not sure if Your Honor is referring to relief from his current 1326 case or You say the whole thing is speculation on speculation. It's speculation on speculation in that if the immigration attorney had done what the defendant is proposing and requested a continuance so that he could propose or, excuse me, pursue post-conviction relief, the first speculation is that that request would have been granted. We don't know that it would have. You're talking about plausibility. Is it plausible that that relief would be granted? No, Your Honor, it's not. The Board of Immigration Appeals has ruled several times that that is not good cause to continue an immigration proceedings. In light of that authority from the Board of Immigration Appeals, there's no reason to think that an immigration judge would continue an immigration proceeding for that purpose. And, again, we're talking about long delays. The writ in the defendant's case in the Eastern District was filed over two years ago. It was filed in October 2012. Well, you know, there's lots of long delays. And a lot of the long delays are the way the system operates. First of all, people don't get lawyers when they go in there. And part of the long delay is that the system allows notorios to operate in there who prey on these people. So that's part of the long delay. And then the system allows disbarred lawyers to operate, too. So that's part of the problem, too. That adds to our workload, too. So these delays are inherent in the system. You know what I'm saying? Yes, Your Honor. And when the delays get so great that the Attorney General will dump 8,000 cases on us in one day or one week, whatever it is. We used to get 800 a year. All of a sudden, we've got 8,000. That delays us, too. So, you know, you'd think that if constitutional rights have been violated, that we cherish those rights, that we ought to see that that's corrected. And so if it's plausible, if there's some fair chance of that coming about, then we don't want people wrong. So we hope the system will do the right thing. So why isn't that plausible? In a civilized manner. We certainly do all hope that the system does the right thing. The relief that the defendant is talking about, though, in this case, I don't think is plausible. The Board of Immigration Appeals has said aliens and deportation proceedings, it's not good cause to continue the proceedings solely for the purpose of allowing them to pursue collateral attacks. In light of the fact that that's the state of the law, it's not plausible that an immigration case would continue. They're even so crowded now that when you get on one of their calendars and they grant a continuance, it could be for a year, a year and a half. That happens all the time. Have you by any chance reached out to the AUSA in the Eastern District to see what the maybe Ms. Bader is a better person to ask this question, what the status is of the post-conviction relief petition? I take it normally the government would then secure an attorney waiver and would then submit a response from the attorney. I'm just wondering whether then this is going to be a credibility contest that Judge Ishii would then have to decide in order to figure out whether there was even a Kwan error in the first place, assuming that Padilla is not retroactive. I have not spoken to the AUSA, but I've checked the docket up there, and according to the docket it appears that this has all been fully briefed. The government did, as you suggested, obtain such an order waiving attorney-client privilege, and then it appears that I believe it was last April the government filed its response to the writ under seal. Because it's under seal, I haven't had a chance to actually read the response, but it appears that it has been fully briefed, and other than that I don't know if anything has happened. According to the docket, nothing has happened since then. The defendant is now back in the Eastern District of California. I believe he's been released from custody on this case and was transported back to the Eastern District of California for a supervised release violation. So since he's now physically present in the Eastern District, and as Ms. Bader pointed out, she was recently appointed up there to represent him, I would hope that those proceedings would actually begin to progress. Tell me more. He's been released? Explain to me a little bit. He's not incarcerated pursuant to 1326? No, Your Honor. He's been released on the 1326, and I believe two or three weeks ago, maybe a little longer than that, he made his appearance in the Eastern District of California on a supervised release violation. Incarcerated while the supervised release revocation proceedings are pending, which I'm assuming that the issue of figuring out whether the conviction is valid in the first place before proceeding with that supervised release revocation matter. I'm not certain, but I do believe that he is in custody. I don't believe anybody has granted him bond, but I'm sure Ms. Bader can speak to that. So he's in custody now? Yes, Your Honor. He is in custody in the Eastern District. For a probation violation? Yes, Your Honor. And what was that violation? The violation, he was on supervised release for his marijuana case, and it's alleged that he violated that supervised release by committing this 1326. Oh, the 1326 is the violation? I believe so. So he went back and came back again? No, Your Honor. He was deported. He returned to the United States unlawfully. The Southern District of California prosecuted him for 1326. He was sentenced to, I believe, 37 months on this case. He recently finished serving that sentence, and when he was released from Bureau of Prisons after serving that sentence, he was transported to the Eastern District of California. So what's he doing up there now? The Eastern District of California filed a probation revocation action against him for violating the law by coming back to the United States illegally. Oh, I see. So. So it's like a double whammy, huh? Potentially, Your Honor. But as Judge Nguyen points out, since he's now physically in the Eastern District in custody, I would hope that the Eastern District would come to a quick resolution on all of these issues. Thank you, Your Honor. Meaning what, that they come to a quick resolution? Decide first off the issue of his writ, and then after that, depending on what the results of the writ are, decide whether they're going to continue with the prosecution or not. And again, I haven't spoken to the U.S. Attorney up there, so I have no idea what their intentions would be if the writ is granted. Okay. Thank you, Your Honor. I do intend to try that course. And there is a hearing on the revocation in the Eastern District, I think, on April 14th. I was just appointed on the case for the petition for the writ of Eric Corum Novus. I had asked last summer, but I never heard from Judge Ishii until I re-asked, and I was appointed last month. So that case, Judge Ishii. Judge Ishii? Yes. Under the CJA, under the Criminal Justice Act. And he needs counsel no matter what, so I'm happy to do it. And I think a lot of those issues and his criminal defense attorney do need to be addressed. The government's gotten access to him, personally to Judge Ishii's orders, and now it's Mr. Ray's turn. And he served his time on the 1326? On this one, yes. He finished that in, I think it was December, might have been November. And then they had filed an order to show cause on his Eastern District case in 2010, as soon as he got arrested here. So then they wait until he finished his sentence, and then they've got him in custody. And he is in custody awaiting the supervised release revocation proceedings? Yes. He's in custody. He's never been out since January 2010. And now that the matter's been fully briefed with regard to the post-conviction relief matters, or is that correct? The matter's been fully briefed now? No, it hasn't. That's why I asked to be appointed, because there needs to be more briefing, at least one more brief, to respond to the government. And they did, the government received permission to talk to his attorney from Judge Ishii. We did brief that. They did. And now it's basically Mr. Ray is going to address that and a number of other things. So that's going to happen. There's more briefing on that anticipated. Do you anticipate a quick resolution of that matter? I would imagine it would. I know federal court takes a long time, but I would imagine it could and would happen in this year. Because my sense is that I think people should realize that in that district where they have a habit where the magistrates and the district court judges deport defendants, literally, in order that they've surrendered to deportation during their sentencing hearing. If they didn't do it for one defendant and they did it for the next, I think they should be able to recognize that was a major flaw. And nobody just noticed that he would be subject to deportation. And so I think it could be resolved fairly easily. I don't know. And there's a host of other problems with that case that I've briefed. But I think anybody would see that if we're deporting all these defendants when they get sentenced on their federal criminal cases here, but we didn't deport this one, and we didn't even warn him of immigration consequences anywhere, I think that's kind of a no-brainer. You're going to have to vacate the plea, but I don't know. I could be wrong. I'm very rarely incompetent about a case, very rarely. The defense usually loses. But in that case, something happened. Everybody forgot or they didn't think about immigration consequences, but they did for the other defendant right next to him. So, anyway, I wanted to address a few quick things. I will cite you the case from this court that quotes the CFR that says a reasonable request for a continuance shall be granted by the immigration court. It happens all the time. I think it has to happen with almost all post-conviction relief cases because once you tell a person he's going into deportation proceedings, he goes right in. And you can't go in on that first day of arraignment on a master calendar hearing and already be prepared for post-conviction relief and say, yeah, well, you can arraign him and we've already vacated the plea. That very rarely happens. It's just unrealistic. So I don't know. I wasn't even prepared for the argument about whether continuance would be granted. I think either of these IJs would have granted them. The further evidence of the immigration attorney's ineffective assistance is found at pages 202 to 230 of the excerpt of record. What is important about that is it's a copy of his file that he sends him and he indicates it's a full copy of all his documents from that file. What's important about that is what is missing from that file. He obviously never checked in to post-conviction relief, even though we told the client's family he had. Because if he had, minimally he would have a plea agreement or transcripts from the plea colloquy or the sentencing colloquy. And then you might say, well, maybe he found the plea agreement somewhere. I don't think it's on the docket, but what I definitely know was not on the docket in the Eastern District at that time were transcripts of the plea colloquy and the plea sentencing. There's no transcripts anywhere until 2010 when I asked for them. So he couldn't have asked for transcripts. He didn't ask for transcripts. We know that because they're not on the docket at the time he represented Mr. Reyes. So he couldn't have found out about whether immigration consequences were advised to his client even during the plea or the sentencing. And he also would have been able to find out that the attorney represented three people. He might have been able to find out that the attorney represented three people in the case. No, he would have found out the criminal defense attorney represented two people in the case. But just looking at the docket himself, he could not see that the criminal defense attorney was also representing a government witness. And so that was his other basis for vacating that plea because the criminal defense attorney had a deep conflict representing a government witness. He wasn't telling the government what they wanted to hear, and in the meantime he's representing two defendants. The conflict is by representing the juvenile Enrique. That's the lawyer's thing, huh? Is that the person? Ruiz is the criminal defense lawyer. Singh is the immigration attorney that was hired. So Ruiz is the criminal defense attorney that represented three gentlemen in one case, including one who was a grand jury witness that had exonerating evidence for the defense, which obviously the government would be reluctant to showcase. Ultimately they had to, but it looks like he protected his one client. So there are many reasons to vacate that case. Okay, thank you. So Ruiz represented them, huh? Ruiz represented the three defendants in the Eastern District, all in the same case. One was a government witness, and then he represented two defendants. I think just that alone was a conflict. That's my opinion. All right. So Ruiz was the criminal attorney, and Singh was his immigration attorney. Yes. Who represents him, who handles immigration matters for our court. Singh is the attorney who appeared telephonically on the phone with the immigration judge. He was in Fresno while the immigration judge was with Mr. Ruiz down in Keloy, Arizona, in the immigration detention facility down there. He is the one that took the case for about three weeks and never went into post-conviction relief. Never what? He never looked into post-conviction relief, it looks like. Yeah, okay.
judges: Pregerson, Fletcher, Nguyen